**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BACHNER + CO., INC., et al.,<br><br>               Plaintiffs,<br><br>vs.<br><br>WHITE ROSE FOOD, INC., et al.,<br><br>               Defendants. | Civil Action No.: 09-2640 (PGS)<br><br><br>**OPINION** |

**SHERIDAN, U.S.D.J.**

This case involves a dispute over the alleged misuse of graphic designs created by Cliff Bachner, "a well-known and respected" brand strategist, and his company, Bachner + Co., Inc. (the "Company"). (Compl. ¶ 1.) Bachner and his Company (collectively, "Plaintiffs") allege that, among other things, White Rose Food, Inc. ("White Rose") breached a confidentiality agreement with Plaintiffs and wrongfully disclosed Bachner's designs to a third party, defendant C.M. Jackson ("Jackson"). Currently before the Court are White Rose and Howard Rakowsky's motion to dismiss,[1] Jackson's motion to dismiss, and Plaintiffs' motion for leave to amend the complaint. For the reasons set forth below, White Rose and Rakowsky's and Jackson's motions are denied, and Plaintiffs' motion is granted.

---

[1] Howard Rakowsky is Vice President of Grocery Purchasing at White Rose.

1

## I.       BACKGROUND

In or about April 2003, Bachner approached Andy Staib of DWS Printing Associates, Inc. ("DWS") with the intent of obtaining a contract to redesign White Rose's company logo and packaging. (*Id.* ¶¶ 16-19.) White Rose is a large independent food wholesaler and distributor in the New York City metropolitan area. (*Id.* ¶ 12.) Bachner reached out to Staib because DWS, a New York-based company, had previously worked with White Rose on a project-by-project basis. (*Id.* ¶ 18.)

Although the facts and timing are altogether unclear, at some point in or around mid-May 2003, Bachner and Staib met with White Rose management, including defendant Howard Rakowsky, for a series of meetings at corporate headquarters. (*Id.* ¶ 22.) At the first of these meetings, "Bachner made a personal pitch for White Rose to consider a coordinated and comprehensive redesign of all White Rose brand/logo labels and packaging." (*Id.* ¶ 24.) At or shortly after this meeting, Bachner and Staib also provided White Rose with a detailed letter outlining possible services and pricing. (*Id.* Ex. B.)[2] The letter proposed redesigning 15 items per month over a period of approximately five years. (*Id.*) However, the letter clearly indicated that Staib, not Bachner, was the "principal contact throughout the redesign process," and that "billing will continue to flow directly from DWS to White Rose." (*Id.*) Bachner was CC'ed on the letter. (*Id.*)

Bachner, Staib and White Rose management next met on May 22. At this second meeting, Bachner and Staib presented a new "label design system that would serve as a template for all White Rose products," and two new designs for apple juice, corn kernels, and corn flakes. (*Id.* ¶¶ 25-27.)

---

[2] The letter is dated May 23, 2003, but notes that the parties' next meeting is "Thursday, May 22." (*Id.*)

Management was "extremely pleased and enthusiastic about the[se] designs." (*Id.* ¶ 28.) Nonetheless, Bachner was hesitant to present anything further without a confidentiality agreement to protect his allegedly proprietary work. (*Id.* ¶ 30.)

On May 29, 2003, Bachner and Rakowsky signed a confidentiality agreement (the "Confidentiality Agreement"). (*Id.* Ex. A.) The Confidentiality Agreement was a one page document indicating "the possibility of cooperation between our two companies" and noting that "it may be necessary for either party to transfer to the other information including items considered by one of the parties to be of a proprietary nature." (*Id.*) In addition, White Rose made "repeated assurances that Plaintiffs [*sic*] proprietary designs would be used for evaluation purposes only." (*Id.* ¶¶ 28-29.)

Once the Confidentiality Agreement was signed, Bachner continued preliminary work on White Rose's logo and packing redesigns. (*Id.* ¶ 32.) Nonetheless, despite management's initial enthusiasm, the parties eventually parted ways, and no contract was ever executed. Further complicating matters, White Rose also allegedly refused to return Bachner's preliminary designs and presentation materials despite his demands. (*Id.* ¶¶ 33, 38-40.) Instead, White Rose hired defendant C.M. Jackson ("Jackson"), a company with a longstanding relationship with White Rose, to continue with the project. (*Id.* ¶ 38.) Jackson eventually completed the project, and allegedly incorporated Plaintiffs' proprietary designs into its work. (*Id.* ¶¶ 43-44.)

On May 29, 2009, Plaintiffs filed a complaint alleging four counts: (1) breach of contract against White Rose, Rakowsky, and Di Giorgio Corporation ("Di Giorgio"), White Rose's parent company; (2) unjust enrichment against all defendants; (3) fraud against all defendants; and (4) copyright infringement against all defendants. In response to Plaintiffs' complaint, White Rose,

Rakowsky, and Di Giorgio moved to dismiss, and Jackson moved to dismiss (collectively, "Defendants").

Plaintiffs did not initially respond to the merits of either motion to dismiss, but instead filed a proposed amended complaint.  Plaintiffs proposed amended complaint omits Cliff Bachner as a plaintiff and Di Giorgio as a defendant.  The proposed amended complaint also asserts the following claims: (1) breach of contract against White Rose and Rakowsky; (2) unjust enrichment against all Defendants; (3) fraud against White Rose and Rakowsky; and (4) aiding and abetting fraud against Jackson.  Neither the complaint nor the proposed amended complaint name DWS as a party to the litigation.

On August 25, 2009, in response to Plaintiffs' proposed amended complaint, the Clerk terminated Di Giorgio as a defendant without objection from Plaintiffs.  (Docket Entry 19.) Thereafter, on September 9, 2009, the Court entered an order denying without prejudice Plaintiffs' request for leave to amend.  Instead, the Court afforded Plaintiffs the opportunity to more fully respond to Defendants' motions and instructed Plaintiffs to seek leave to amend in its opposition papers, which they have done.  (Docket Entry 23.)

## II.   DISCUSSION

Although Defendants' motions are primarily based upon Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must first address whether dismissal is appropriate under Rules 12(b)(7) and 19 for failure to join an indispensable party.  In this case, Defendants argue that DWS is a necessary and indispensable party, and that dismissal is appropriate because joinder of DWS as a defendant defeats subject matter jurisdiction.  *See Dickson v. Murphy*, 202 Fed. Appx. 578, 580

(3d Cir. 2006).[3]

Dismissal under Rule 19 generally requires a three step analysis.  First, a court must determine "whether it is necessary that the absent party be joined." *Fiscus v. Combus Fin. AG*, Civil Action No. 03-1328 (JBS), 2007 WL 4164388, at *4 (D.N.J. Nov. 20, 2007); *see Republic of Philippines v. Pimentel*, 128 S. Ct. 2180, 2189 (2008).[4]  Second, a court must see whether it is [feasible] for the absent necessary party to be joined." *Fiscus*, 2007 WL 4164388, at *4.  Third, "if joinder of the absent party is not feasible," a court must evaluate "whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed,' the absent person being thus regarded as indispensable." *Id.* (quoting FED. R. CIV. P. 19).  The Court addresses each of these steps in turn.

## A.      DWS is a Necessary Party

Rule 19(a)(1) sets forth the standard on whether it is necessary that the absent party be joined. Pursuant to this rule, a person must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or

---

[3] Both the Company and DWS are allegedly New York corporations and diversity would be defeated if the Company remains a plaintiff and DWS is joined as a defendant.  However, Defendants acknowledge that joinder of DWS as a plaintiff would not impact diversity.

[4] Some courts combine steps one and two of this process.  *See, e.g.*, *Dickson*, 202 Fed. Appx. at 580.

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1); *see also Pimentel*, 128 S. Ct. at 2189.

In the absence of DWS as a party, the possibility exists the Court cannot afford complete relief among the parties. Moreover, White Rose and Jackson may be at risk of incurring multiple or otherwise inconsistent obligations if DWS is not joined. For example, Plaintiffs unjust enrichment claim -- arguably, the primary claim underlying the complaint -- also entitles DWS to relief. Plaintiffs allege that the May 23, 2003 proposal "would have been required to compensate Plaintiffs in an amount well in excess of $900,000.00." (Compl. ¶ 55.) However, DWS (as opposed to Plaintiffs) may be entitled to some portion of payment under the proposal. According to the proposal, DWS is the "principal contact throughout the redesign process," and "billing will continue to flow directly from DWS to White Rose." (*Id.* Ex. B.) Bachner is a subcontractor for DWS on the project. Thus, DWS is a necessary party pursuant to Rule 19(a). Indeed, "'a contracting party is the paradigm of an indispensable party.'" *Fiscus*, 2007 WL 4164388, at *5 (quoting *Travelers Indem. Co. v. Household Intern., Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991)).

### B.     Joinder of DWS is Feasible

The next step in a Rule 19 analysis is determining whether it is feasible for the absent necessary party to be joined, which is itself a two tiered process. *See Fiscus*, 2007 WL 4164388, at *4; *see, e.g.*, *Murray v. Miss. Farm Bureau Cas. Ins. Co.*, 251 F.R.D. 361, 364 (W.D. Wisc. 2008). First, a court must determine whether a nonparty should be a plaintiff or defendant. *See Murray*, 251 F.R.D. at 364. Second, a court must, if necessary, arrange the parties to their "true sides in the dispute." *Id.* (citing *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941)

(Frankfurter, J.)). If, as a result of this two step analysis, the Court is divested of jurisdiction, joinder is not feasible. *See, e.g.*, *Bonar, Inc. v. ABPI-De., Inc.*, 631 F. Supp. 990, 1000 (E.D. Pa. 1986).

Pursuant to Rule 19, DWS must be joined as a defendant because, as a New York corporation, DWS can easily be served with process and be brought within the jurisdiction of this Court. DWS cannot be joined as a plaintiff because "[i]nvoluntary joinder as a plaintiff is permissible only if the absent party is both beyond the jurisdiction of the court and the party seeking joinder is entitled to use the nonparty's name to prosecute the action." 2 *Motions in Federal Court* § 6:11 (3d ed. 2009); *accord Bonar*, 631 F. Supp. at 999 (involuntary joinder as plaintiff only appropriate where party cannot be served with process); *Marn v. United States*, 94 F.R.D. 39, 40 (W.D. Pa. 1982).

However, the joinder of DWS as a defendant pursuant to Rule 19 does not defeat diversity. Regardless of how a nonparty is joined, it is well settled that a court must "realign the parties, for purposes of determining diversity, according to their real interests." *Bonar*, 631 F. Supp. at 999; *accord City of Indianapolis*, 314 U.S. at 69; *Marn*, 94 F.R.D. at 40-41 . DWS's real interest in this litigation is as a plaintiff. For example, under Plaintiffs' theory of unjust enrichment, DWS would be entitled to at least a portion of damages "in excess of $900,000.00." (Compl. ¶ 55.) Plaintiffs' other claims may also entitle DWS to relief. And none of Plaintiffs allegations are against DWS. Thus, DWS is joined as a defendant pursuant to Rule 19, the Court may independently align DWS as a plaintiff for purposes of determining diversity.

The final step of a Rule 19 analysis is inapplicable because joinder of DWS is feasible. Only "if joinder of the absent party is not feasible," must a court evaluate "whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent

person being thus regarded as indispensable.'" *Fiscus*, 2007 WL 4164388, at *4 (quoting FED. R. CIV. P. 19). Thus, Defendants' request for dismissal of Plaintiffs' complaint pursuant to Rules 12(b)(7) and 19 is denied.

As a result of the Court's joinder of DWS, the remainder of Defendants' motions to dismiss are moot at this point. Prior to addressing the sufficiency of Plaintiffs' claims, DWS should have an opportunity to plead any additional allegations or claims that may entitle it to relief. Once hearing from DWS, the Court will be in a better position to evaluate each parties' interests. Accordingly, Plaintiffs shall file an amended complaint within twenty days naming DWS as an indispensable party. *See* 59 *Am. Jur. 2d Parties* § 373 (2d ed. 2010).

## III.   CONCLUSION

For the foregoing reasons, White Rose and Rakowsky's motion to dismiss and Jackson's motion to dismiss are denied, and Plaintiffs' motion for leave to amend the complaint is granted. Plaintiffs shall file an amended complaint within twenty days naming DWS as an indispensable party, and serve DWS with the amended complaint.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

March 17, 2010