NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BACHNER + CO., INC., <br><br> Plaintiff, <br><br> vs. <br><br> WHITE ROSE FOOD, INC., et al., <br><br> Defendants. | Civil Action No.: 09-2640 (PGS) <br><br> **OPINION** |

**SHERIDAN, U.S.D.J.**

This case involves a dispute over the alleged misuse of graphic designs created by Cliff Bachner ("Bachner"), "a well-known and respected" brand strategist, and his company, Bachner + Co., Inc. ("Plaintiff"). Plaintiff alleges that, among other things, White Rose Food, Inc. ("White Rose") breached a confidentiality agreement with Plaintiff and wrongfully disclosed Bachner's designs to a third party, C.M. Jackson Associates, Inc. ("Jackson"). Currently before the Court are White Rose's and Jackson's (collectively, "Defendants") motions to dismiss the amended complaint. For the reasons set forth below, White Rose's motion is granted in part and denied in part, and Jackson's motion is granted.

**I. BACKGROUND**

In or about April 2003, Bachner approached Andy Staib of DWS Printing Associates, Inc. ("DWS") with the intent of obtaining a contract to redesign White Rose's company logo and packaging. (Amend. Compl. ¶¶ 16-19.) White Rose is a large independent food wholesaler and

distributor in the New York City metropolitan area, which had previously worked with White Rose on a project-by-project basis. (*Id.* ¶¶ 8, 16.)

On April 30, 2003, Bachner and Staib met with White Rose management for the first of a series of meetings at corporate headquarters. (*See id.* ¶¶ 18-21.) At this meeting, Bachner provided White Rose with, among other things, "initial designs for the grocery division," "a comprehensive outline of their Project proposal," and "specific label designs for apple juice, corn kernels and corn flakes." (*Id.* ¶¶ 19, 21.) White Rose's response to these proposals was allegedly extremely enthusiastic. (*Id.* ¶ 22.)

On or about May 15, 2003, Bachner and Staib attended a second meeting with White Rose management. (*Id.* ¶ 25.) At this second meeting, "Bachner prepared and provided DWS with a detailed project proposal addressing . . . three White Rose product categories," grocery, frozen foods, and dairy. (*Id.* ¶ 26.) Bachner and DWS also prepared a "comprehensive letter proposal" dated May 23, 2003 (the "Letter Proposal"), which outlined DWS and Bachner's possible services and pricing, including the redesign of 15 items per month over a period of approximately five years. (*Id.* Ex. B.) Of note, however, the Letter Proposal indicated that Staib, not Bachner, was the "principal contact throughout the redesign process," and that "billing will continue to flow directly from DWS to White Rose." (*Id.*) Bachner and his company, Bachner + Co., were copied on the letter. (*Id.*)

On or about May 29, 2003, Bachner and Staib attended a third meeting with White Rose management. (*Id.* ¶ 28.) At this third meeting, White Rose management asked Bachner to "apply his proprietary logo and labeling designs to additional products across White Rose's entire line." (*Id.*) However, Bachner was reluctant . . . without first entering into a contract for the full implementation of the Proposal." (*Id.* ¶ 29.) Bachner was also apparently concerned about

2

protecting the proprietary nature of his work. (*Id.*) Thus, Bachner sought and received "complete promises and assurances" that his designs "would only be used for evaluation purposes." (*Id.*) Bachner also entered into a confidentiality agreement on May 29, 2003 with Howard Rakowsky of White Rose (the "Confidentiality Agreement"). (*Id.* Ex. A.)

The Confidentiality Agreement was a one page document indicating "the possibility of cooperation between [the] two companies," and it noted that "it may be necessary for either party to transfer to the other information including items considered by one of the parties to be of a proprietary nature." (*Id.*) The Confidentiality Agreement also stated the following:

> 1. The term proprietary information shall be considered as generic, covering any data, designs, specifications, materials, methods of manufacturing and other items in which a party considered it has a proprietary right. Materials to be considered proprietary should be clearly identified as such as the time of disclosure. Disclosure of such information may be written, verbal or by observation.
>
> 2. Each of the parties agrees that it will use the same reasonable efforts to protect such information, materials or items as are used to protect its own such proprietary information. Disclosure of such information shall, within each party, be limited to those individuals who are directly participating in the cooperative effort between the parties or who have a need to know for reasons of business planning.
>
> 3. Disclosure of such proprietary information to any third party shall not be made without the express written consent of the party originally disclosing the information.
>
> 4. Reproduction of written items of proprietary information, including letters, sketches[,] drawings, tables, reports, tests, data, etc., may not be made without the express written consent of the party originally disclosing the information.
>
> 5. This agreement may not be modified except in by mutual agreement of both parties. The validity of this agreement shall be governed by the laws of the state of New York.

Once the Confidentiality Agreement was signed, Bachner applied his new proprietary logo and labeling design to additional items from White Rose's dairy and frozen food category, and sent "design presentation boards" to White Rose management on May 30, 2003. (*Id.* ¶ 31.) However, negotiations on a final agreement between DWS and White Rose in accordance with the initial Letter Proposal never materialized. (*Id.* ¶¶ 32-34.) Instead, in or around September 2003, White Rose informed DWS and Bachner that it had selected Jackson for its re-branding project, a company, which had a "preexisting relationship" with White Rose. (*Id.* ¶¶ 33, 36.) According to Plaintiff, DWS and Bachner could not compete with the lower prices offered by Jackson. (*Id.* ¶ 35.)

Upon learning that DWS had lost the contract, Bachner "requested that Rakowsky and White Rose return the copies of the presentation boards and proprietary designs provided to White Rose." (*Id.* ¶ 37.) Nonetheless, "White Rose and Rakowsky either failed and/or refused to return . . . the presentation boards and proprietary designs for several months following Bachner's initial request to do so." (*Id.* ¶ 39.)

Approximately six months after losing the contract with White Rose, Bachner learned (through DWS) that "White Rose had implemented the redesign of its brand/logo labels and packaging" using Jackson. (*Id.* ¶ 40.) According to the amended complaint, White Rose "provided" Jackson with Bachner's proprietary work and "asked" Jackson to "essentially duplicate such designs and roll out nearly identical designs for all of White Rose's 900 plus product line." (*Id.* ¶ 41.) It is further alleged that White Rose "never had any intention of awarding the contract to Plaintiff and DWS." (*Id.* ¶ 67.)

On May 29, 2009, Plaintiffs filed a four count complaint alleging breach of contract, unjust enrichment, fraud, and copyright infringement. In response to Plaintiffs' complaint, Defendants

moved to dismiss. On March 17, 2010, the Court entered an opinion and order denying as moot Defendants' motions to dismiss and granting Plaintiff leave to file an amended complaint. The Court further ordered Plaintiff to name DWS as a defendant because DWS is an indispensable party pursuant to Rule 19.[1] However, Plaintiff has brought no claims against DWS; nor has DWS appeared, although it has executed a waiver of service. (ECF No. 46.)

On April 6, 2010, Plaintiff filed an amended complaint asserting the following claims: (1) breach of contract against White Rose; (2) unjust enrichment against White Rose and Jackson; (3) fraud against White Rose; and (4) aiding and abetting fraud against Jackson. Cliff Bachner was not named as a plaintiff in the amended complaint, and Rakowsky and Di Giorgio Corporation, White Rose's parent company, were not named as defendants. Defendants once again move to dismiss.

## II.  STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court is required to accept as true all allegations in the complaint and to view the facts in a light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S. Ct. at 1950. A court will not, however, accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 129 S. Ct. at 1949. The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to

---

[1] Defendants sought dismiss of the complaint pursuant to Rule 12(b)(7) and 19, but the Court found that joining DWS as an indispensable party would not defeat subject matter jurisdiction. *See Bachner + Co., Inc. v. White Rose Food, Inc.*, Civil Action No. 09-2640 (PGS), 2010 WL 1049847, at *4 (D.N.J. May 17, 2010).

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. In other words, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

### III.    DISCUSSION

#### A.    Breach of Contract

Plaintiffs first count alleges breach of contract against White Rose for its alleged violations of the Confidentiality Agreement. In order to assert a claim for breach of contract under New York law, a plaintiff must satisfy four elements: "'(1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and, (4) damages resulting from the breach.'" *Marks v. N.Y. Univ.*, 61 F. Supp. 2d 81, 86 (S.D.N.Y. 1999) (quoting *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 827 F. Supp. 985, 988 (S.D.N.Y.1993)).[2]

In support of dismissal, White Rose makes two related arguments. First, White Rose argues that the Confidentiality Agreement is unenforceable because White Rose never entered into a final agreement with Plaintiff or DWS. (White Rose Br. at 17.) According to White Rose, the "clear intent and scope" of the Confidentiality Agreement contemplates only "the possibility that White Rose and Bachner, moving forward, may enter into a 'cooperative program' whereby proprietary designs disclosed 'in the performance of' [] such a program would be confidential." (White Rose Reply Br. at 3.) Second, even if the Confidentiality Agreement is in effect, it is limited to designs created by Bachner after the date the contract was executed, May 29, 2003.

---

[2] As noted, the Confidentiality Agreement is governed by New York law. (Amend. Compl. Ex. A ¶ 5.)

White Rose's interpretation of the scope of the Confidentiality Agreement, however, is open to dispute. The terms "cooperation" and "cooperative program" are not defined in the Confidentiality Agreement, and they may (or may not) include the cooperation and exchange of designs already taking place between Bachner and White Rose prior to May 29, 2003, not just "moving forward." (White Rose Reply Br. at 3.) Nor does the phrase "possibility of cooperation" shed light on the scope of the Confidentiality Agreement because the parties were already engaged in cooperation, in the general sense. Thus, the Confidentiality Agreement's scope is ambiguous. *See Sarinsky's Garage Inc. v. Erie Ins. Co.*, 691 F. Supp. 2d 483, 486 (S.D.N.Y. 2010) (interpreting New York law) ("A contract is ambiguous if the terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.") (internal quotations omitted). And this ambiguity, along with the pre-May 29, 2003 statements allegedly made by White Rose management -- its "promises and assurances" of confidentiality -- make dismissal inappropriate. *See generally id.* ("Where a contract is ambiguous, the parties may present extrinsic evidence regarding their actual intent."); *United Artists Theatre Circuit, Inc. v. Sun Plaza Enter. Corp.*, 352 F. Supp. 2d 342, 349 (E.D.N.Y. 2005) (interpreting New York law). Moreover, even if pre-May 29, 2003 designs are not protected, it is unclear from the record whether post-May 29, 2003 work was ever disclosed in violation of the Confidentiality Agreement.

Separately, White Rose and Jackson also take issue with whether Plaintiff's work can be considered proprietary or confidential since it is not protected by the Copyright Act. However, whether works are protected by the Copyright Act has no bearing on the right of parties to freely

contract to keep those works confidential. Jackson also argues that Bachner's changes to the White Rose logo were "insignificant." (Jackson Reply Br. at 3.) But even assuming Jackson has standing to argue this point on behalf of White Rose, the value of Bachner's designs is a disputed issue of fact. Nor does Bachner's failure to mark his work "proprietary" in accordance with paragraph 1 of the Confidentiality Agreement necessitate dismissal. Accordingly, White Rose's motion to dismiss count one of the amended complaint is denied.

### B. Unjust Enrichment

Count two of Plaintiffs' complaint alleges unjust enrichment against White Rose and Jackson. The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. *Assocs. Comm. Corp. v. Wallia*, 211 N.J. Super. 231, 244 (App. Div. 1986). A plaintiff can ordinarily recover under this doctrine where "the defendant 'received a benefit, and that retention of the benefit without payment therefore would be unjust.'" *Id.* (quoting *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 109 (App. Div.1966)). However, unjust enrichment generally requires a "'plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant.'" *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, Civil Action No. 3:08-cv-1057-FLW, 2008 WL 5381227, at *9 (D.N.J. Dec. 17, 2008) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)). Unjust enrichment is also preempted in certain circumstances. For instance, unjust enrichment cannot be pled where it is closely related to a copyright claim and satisfies the following elements: (1) the particular work "falls within the type of works protected by the Copyright Act"; and (2) the equitable rights asserted that are "equivalent to" one of the bundle of exclusive rights already protected by copyright law. *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F.

Supp. 2d 552, 564 (D.N.J. 2002) (citing *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir.1997)).

Plaintiff's unjust enrichment claim against White Rose and Jackson fails because it is preempted by copyright law. Plaintiff's alleged proprietary work -- logos and labeling designs -- fall within the type of work protected by copyright law, and the rights asserted are equivalent to the bundle of rights already protected by copyright law. Indeed, Plaintiff's original complaint included a claim for copyright infringement, but that claim was voluntarily dismissed. Moreover, Plaintiff's unjust enrichment claim can also be dismissed because there is no indication that Plaintiff expected remuneration from either White Rose or Jackson. *See Torres-Hernandez*, 2008 WL 5381227, at *9; *cf. MK Strategies, LLC v. Ann Taylor Stores Corp.*, Civil Action No. 1:07-cv-02519, 2007 WL 4322796, at *3 (D.N.J. Dec. 6, 2007). Plaintiff was only a subcontractor to DWS, the party who would expect to be paid by White Rose. *Bachner + Co., Inc. v. White Rose Food, Inc.*, Civil Action No. 09-2640 (PGS), 2010 WL 1049847, at *3 (D.N.J. May 17, 2010) ("Bachner is a subcontractor for DWS on the project."). Accordingly, count two of Plaintiff's amended complaint is dismissed.

### C.   Fraud

Count three of Plaintiffs' amended complaint alleges fraud against White Rose. Under New Jersey law, there are five elements of a common law fraud claim: (1) a material misrepresentation; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the plaintiff rely on the false misrepresentation; (4) reasonable reliance by the plaintiff; and (5) resulting damages. *City of Millville v. Rock*, 683 F. Supp. 2d 319, 329 (D.N.J. 2010) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).

In addition to these substantive requirements, a plaintiff must also satisfy the heightened

pleading requirements of Rule 9(b). Pursuant to this rule, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Often, this requirement is characterized as "the first paragraph of any newspaper story"; that is, "the who, what, when, where, and how." *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (internal quotations omitted).

Plaintiff's fraud claim must be dismissed because its allegations are not pled with particularity as required by Rule 9(b). Although the dates and some of the general details of the parties' meetings are described, those allegations lack any detail and sound entirely in breach of contract; there are no particular facts regarding the misrepresentations or intentions of White Rose management. Indeed, Plaintiff's fraud claim is largely limited to the conclusory assumption that White Rose "never had any intention of awarding the contract to Plaintiff and DWS." (Amend. Compl. ¶ 67.) This allegation is insufficient. Accordingly, count three of Plaintiff's amended complaint is dismissed.

### D.     Aiding and Abetting Fraud

Count four of Plaintiff's amended complaint alleges aiding and abetting fraud against Jackson. In order to state a claim for aiding and abetting fraud, a plaintiff must demonstrate the following: (1) the underlying fraud; (2) the defendant's knowledge of the fraud; and (3) substantial assistance or encouragement by the defendant in the fraud. *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998) (citing Restatement (Second) of Torts § 876(b)).

Plaintiff's aiding and abetting claim against Jackson must be dismissed. As set forth above, Plaintiff has failed to plead White Rose's underlying fraud with the requisite particularity. Moreover, even if Jackson somehow profited from White Rose's alleged wrongdoing, there are no

allegations that Jackson provided substantial assistance or encouragement in furtherance of White Rose's alleged scheme. Accordingly, Jackson's motion to dismiss count four of the amended complaint is granted.

## IV. CONCLUSION

For the foregoing reasons, White Rose's motion to dismiss is granted in part and denied in part, and Jackson's motion to dismiss is granted.

_____
HON. PETER G. SHERIDAN, U.S.D.J.

Dated: August 11, 2010